## BETZ v. WYNNE et al.

District Court, E. D. Pennsylvania. May 18, 1927.

No. 73.

1. **Intoxicating liquors** ☞249—Facts held to constitute "probable cause" for issuance of warrant to search freight car and brewery for intoxicating liquors (National Prohibition Act, tit. 2, §§ 1, 37 [Comp. St. §§ 10138½, 10138½x]).

Where prohibition agent, passing brewery which had no permit to manufacture nonintoxicating beverages, under National Prohibition Act, tit. 2, § 37 (Comp. St. § 10138½x), saw a freight car leave the building containing filled barrels not labeled, as required of containers of such beverages by title 2, § 1, of the Act (Comp. St. § 10138½), and which smelled of beer, such facts *held* to constitute "probable cause" for issuance of a search warrant for search of the car and brewery.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probable Cause.]

2. **Intoxicating liquors** ⊙⟹249—Search without warrant of freight car containing filled and unlabeled barrels smelling of beer held legal.

Search and seizure by prohibition agents without a warrant of a freight car containing filled and unlabeled barrels which smelled of beer *held* legal.

At Law. Petition by Thomas Betz against Samuel O. Wynne, Prohibition Administrator, and others, to quash search warrant and for return of property seized thereunder. Denied.

Newton R. Turner, of Easton, Pa., and Benjamin M. Golder, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., and Warren C. Graham, both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge. This case comes before the court on a petition for the quashing of a search warrant and setting aside service thereof, for the return of certain property seized under it, and for an order restraining the defendants from using the property seized as evidence. The prohibition administrator filed an answer and testimony was taken before the court. From the testimony the court finds the following to be the facts:

[1] The place in which the search was made is a brewery located in Reading, Pa., and the petitioner is the lessee of the real estate and owner of the brewery equipment. He holds no permit under the thirty-seventh section of title 2 of the National Prohibition Act (Comp. St. § 10138½x), nor any permit to manufacture beer or any intoxicating liquor. On the morning of the day of the search, an enforcement agent, driving an automobile in the neighborhood of the brewery, observed the large gates which inclosed the freight siding located on the brewery premises open and a freight car roll out. The siding is roofed over and the inclosure forms à part of the brewery premises. The car came to a stop, and, upon approaching, the agent detected a strong smell of beer coming from it, which, he testified, he was able to identify as the smell of real or high-powered beer, as distinguished from cereal beverage. He went to the car and, looking through a crack, saw a barrel within which he described as a beer barrel, without a label of any kind. He then, with the assistance of another agent, opened the door of the car (which was not sealed), examined the barrel, and found it was full, and it gave out the odor of beer.

The agents then went to the front door of the brewery, and, upon being refused admittance, climbed up over the car siding, took an ax, broke a pane of glass and some pine boards behind it, and entered the brewery. Inside, they found large quantities of beer in barrels in the racking room, which they tested and identified by the taste. There was also beer in vats. The agents, or one of them, remained in the brewery about 24 hours. In the meanwhile, tests were made both of the beer taken from the brewery premises and from the freight car. It all showed alcohol in excess of one-half of 1 per cent.; the freight car sample showing 5 per cent. A search warrant was then obtained, based upon the evidence obtained from the freight car, as well as from the brewery premises, and, armed with this warrant, the agents returned and made the seizure which is the subject of this proceeding.

The petitioner contends that the only evidence upon which a finding of probable cause could be based was the statement of the agent that he smelled real or high-powered beer, that it is manifestly impossible to distinguish by the sense of smell real beer from cereal beverage, and that the agents' testimony on that point should be disregarded as a flat absurdity. The petition further contends that, in the absence of any credible evidence that real beer could be detected in the freight car, there was no probable cause to believe that the law was being violated, because the brewery, being a no-permit brewery, might have been making cereal beverage by the arrested fermentation process, under which the liquid never reaches an alcoholic content of more than one-half of 1 per cent., and that therefore the entry was illegal, and inasmuch as the search warrant and all subsequent proceedings upon it could only be supported by evidence obtained from the brewery premises, therefore the whole proceeding was illegal.

We think it unnecessary to discuss the question of whether or not it is humanly possible by the sense of smell to distinguish between real beer and cereal beverage. Beer has a distinctive odor, and the fact (if it be a fact) that it will have the same odor after the removal of the alcohol from it does not forbid the use of the sense of smell in determining its presence for the purpose of search or as evidence generally. The manufacture of intoxicating liquor is prohibited by the National Prohibition Act, and section 1 of title 2 of the act (Comp. St. § 10138½) defines intoxicating liquor as including "beer," and, *in addition thereto*, any liquor containing one-half of 1 per cent. or more of alcohol.

Here the building was a brewery—a plant exclusively designed for the manufacture of beer. There was no permit in existence authorizing any one to make beer there, and consequently the manufacture of beer on the premises was necessarily unlawful. These facts were known to the agent. With knowledge of them he sees the door of the place open and a freight car roll out, which contains a number of barrels and emits an odor characteristic of beer. The barrels, as seen through the crack in the freight car, are without labels. All these facts, taken together, certainly constitute probable cause for a search of the freight car without a warrant.

We have referred the fact that the barrels were unlabeled. The same section of the act which defines intoxicating liquor provides that "the foregoing definition shall not extend to * * * any beverage * * * produced by the process by which beer * * * is produced, if it * * * is contained and sold in * * * such sealed and labeled * * * containers as the Commissioner may by regulation prescribe." Article 7 of regulation 60, relating to intoxicating liquors, provides that "each package or container of cereal beverage must bear a label showing the name of the manufacturer," and certain other matters. It will be noted that, under the regulations, premises where cereal beverages are produced by arrested fermentation are classified as dealcoholizing plants and require permits to operate (sections 720, 721), and that the proprietor of such premises, even though he makes his beverage by the arrested fermentation process, must keep daily records and summaries of each month's transactions, and make regular reports (sections 725, 726). We are not here passing upon the right of the Commissioner or of Congress to regulate the manufacture of cereal beverage by the arrested fermentation process, in which the liquid never reaches an alcoholic content of more than one-half of 1 per cent., but the fact is that the regulations above referred to are in force, and the absence of labels may be considered on the question of probable cause.

[2] It is also a fact that before the search warrant was obtained a test was made of the beer taken from the freight car, and it was found to contain more than five per cent. of alcohol. It is clear that the seizure and opening of the freight car without any warrant at all was legal. The recent decision of the Supreme Court in Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, defining the rights of officers to seize and search automobiles, takes into consideration the movable character of the thing searched, and the reasoning of the case applies to freight cars, as well as to automobiles. The seizure of the freight car being legal, after a determination that the beer, which was in the freight car and which was seen coming out of the brewery, contained more than 5 per cent. of alcohol, the search warrant based on this evidence was a legal warrant. Even had the first entry upon the brewery premises made without warrant not taken place, there would have been sufficient evidence to sustain the warrant, and for that reason I am of the opinion that the legality of the forced entry into the brewery need not be determined at this time. The evidence obtained under it was in no sense a necessary basis for the search warrant, for which there was plenty of other evidence.

The petition is denied.